EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.*
JUSTINO RODRÍGUEZ, acusado y apelante.

No. 3205.—*Visto:* Noviembre 22, 1927. *Resuelto:* Noviembre 30, 1927.

DERECHO PENAL—EVIDENCIA—PESO Y SUFICIENCIA DE LA PRUEBA PARA SOSTENER CONVICCIÓN.—Una mera sospecha de culpabilidad, por fuerte y bien fundada que sea, no es suficiente para sostener una convicción en un caso criminal y cuando una corte fundándose en prueba de la cual en su conjunto no se desprende más que tal sospecha condena a un acusado, ésta comete error manifiesto en la apreciación de la prueba.

SENTENCIA de *Gabriel Castejón,* J. (Humacao), condenando al acusado por delito de abuso de confianza. *Revocada,* absolviéndose al acusado.

*F. Cervoni Gely,* abogado del apelante; *José E. Figueras,* abogado de *El Pueblo,* apelado.

EL JUEZ ASOCIADO SEÑOR HUTCHISON, emitió la opinión del tribunal.

El apelante, quien era un agente y empleado de la Universal Commercial Company a cargo del establecimiento y del negocio de la referida compañía en el municipio de Juncos, fué convicto de un delito de abuso de confianza en diez casos en virtud de otras tantas denuncias radicadas por Félix Rodríguez, otro agente y empleado de la dicha compañía, residente en Caguas. Las varias sumas de las que se alega se apropió el acusado ascendían en total a algo más de cien dólares, siendo la partida cubierta por la acusación en este caso una de quince dólares. Al terminar el juicio del presente caso, los nueve casos restantes fueron sometidos por estipulación por la prueba ya aducida y que se admitió ser la misma sobre la cual se basaron las otras acusaciones.

Fernando Barreras, la persona a quien se le habían cobrado los quince dólares, y Félix Rodríguez fueron los únicos testigos del fiscal.

Aparte de la identificación de un contrato que se dice haber sido hecho entre el acusado y la Universal Commercial Company, a la que nos referiremos de aquí en adelante como la compañía, de la prueba documental tendente a probar la existencia de dicha compañía y de dos recibos expedidos por el acusado a favor de Fernando Barreras, de fecha 28 de febrero, 1926, la declaración del testigo denunciante, Félix Rodríguez, fué en substancia, que él estaba a cargo de otros empleados de la compañía en cierto distrito, quienes trabajaban a sus órdenes, así como de las ventas y cobros; que conoce a Justino Rodríguez, quien era empleado de la compañía en Juncos; que el 2 de marzo el testigo fué a la oficina de la compañía en que trabajaba Rodríguez y halló que le había cobrado quince dólares a un tal Barreras de los cuales no había dado cuenta a la compañía; que el testigo le preguntó a Rodríguez con respecto al dinero perteneciente a la compañía y Rodríguez contestó que no lo tenía y que por esta razón no podía entregarlo; que Rodríguez le dijo al testigo que le había cobrado quince dólares a Barreras; que Rodríguez, como empleado de la compañía, tenía el deber de efectuar cobros; que el testigo fué a Juncos con el propósito de inspeccionar la oficina y que los cobros se hacían semanalmente; que el cobro que le hizo Rodríguez a Barreras correspondía al informe del tres de marzo, el cual Rodríguez no hizo; que Rodríguez nunca dió cuenta del cobro que le hiciera a Barreras, el cual debió haber sido incluído en el informe de la primera semana de marzo; (en la repregunta) que el tres de marzo fué miércoles y que Rodríguez debía rendir su informe semanal el día seis de lo que había cobrado desde el 28 de febrero al dos de marzo; que el testigo radicó la denuncia en este caso el 3 de marzo porque en la ocasión en que visitó al acusado, éste no tenía el dinero en su poder, y el acusado no

podía rendir el informe sin el dinero; que el acusado le manifestó al testigo: "Yo no tengo dinero, métame a la cárcel"; que el testigo no sabe si Rodríguez telefoneó en la mañana del día 1º de marzo informando sobre un escalamiento que se dice haber sido cometido la noche anterior; que el 1º de marzo el testigo fué a Juncos, y Justino le informó del robo de la noche anterior; que Justino trabajó durante todo aquel día y el siguiente, y cuando el testigo volvió a Juncos el acusado había cobrado unos cincuenta dólares que deseaba pagarle a un empleado; que Justino no le pagó al testigo en aquella ocasión $37.50 sin entregarle recibo por los mismos; que no es cierto que la compañía jamás le permitiera a Justino que depositara dinero en el banco de Juncos; que lo que prohibió la compañía fué que sus empleados abrieran cuentas personales y expidieran cheques personales; que el testigo no tiene conocimiento de un número de otros escalamientos que se habían cometido en Juncos durante la misma semana; que el testigo no recordaba si Justino le enseñó la puerta por la cual se supone que entró el ladrón y si le explicó cómo la misma había sido abierta; y que Justino había sido empleado de la compañía por siete u ocho meses.

Barreras declaró acerca de la compra que le hizo al acusado de un *chiffonier* y en cuanto al pago de quince dólares por los que se extendieron los recibos ya mencionados.

Juan Amalbert, un policía, ocupó la silla testifical como testigo de la defensa, y dijo que la tienda del acusado fué escalada en la noche del 28 de febrero y que el acusado dió parte inmediata del escalamiento; que alrededor de esos días se había cometido un número de otros escalamientos en Juncos; que el testigo conoce el sitio en que el acusado tenía su tienda, el cual había sido desocupado anteriormente por la oficina postal por el hecho de que el edificio no ofrecía garantía alguna para el debido resguardo de su contenido. Otro policía, Juan R. Alejandro, declaró que el lunes, día 1º de marzo a las seis de la mañana, Justino Rodrí-

guez dió parte al cuartel de la policía del escalamiento de
su mueblería, la cual fué visitada por el testigo, quien halló
algunas marcas hechas con un instrumento de hierro en la
tranca de la puerta que daba acceso a un callejón y la cual
estaba abierta, así como un ropero conteniendo ciertos ar-
chivos o documentos saturados de aceite; que el testigo vió
ciertas pisadas y unas gotas de esperma donde se había
guardado el dinero; que el testigo abrió una de las puer-
tas que daban a la calle desde afuera metiendo una libreta
y levantando la tranca; y que hubo cuatro escalamientos
casi al mismo tiempo, uno de los cuales fué perpetrado en
el establecimiento de don Alejandro Silva que queda frente
al establecimiento del acusado.

Enrique Reyes, el telegrafista a cargo de la oficina del
teléfono de Juncos, dice que Justino Rodríguez fué a la
oficina el 1º de marzo a las ocho y cinco de la mañana y pi-
dió que lo comunicara con la Universal Commercial Com-
pany de Caguas; que Justino se comunicó con la compañía,
pero que el testigo no sabe sobre qué versó la conversación.

La declaración de Manuel Julbes, cajero del Roig Com-
mercial Bank, de Juncos, es al efecto de que conoce muy
poco al acusado, que el acusado fué al banco por dos ocasio-
nes, una solo y la otra acompañado por otro empleado de
la Universal Commercial Company; que Justino quería de-
positar un dinero perteneciente a la compañía, manifestando
que como agente recibía semanalmente una suma de dinero
que tenía que ser enviada a la oficina principal, que la com-
pañía no había autorizado la compra de giros postales, e
inquirió con respecto al método por el cual podría obtenerse
el resultado deseado sin que él o la compañía incurrieran
en gastos; que el testigo informó a Justino y al otro agente
de la compañía que si deseaban depositar tendrían que pa-
gar una pequeña comisión, a lo que respondió el agente úl-
timamente mencionado que no se podía pagar nada como co-
misión; y que la razón por la cual no se depositó dinero al-

guno fué que ellos no querían pagar comisión por concepto de depósitos.

Julio Rosa, un agente y empleado anterior de la compañía en Juncos, declara sobre una experiencia algo similar con respecto al dinero manejado por él y en relación con sus esfuerzos para gestionar los depósitos.

La historia del acusado es que el día 1º de marzo, como a las seis de la mañana, abrió la "Universal" a cargo de la cual estaba y halló una puerta abierta; que su primera impresión fué la de que su ayudante hubiera podido dejar la puerta abierta a causa de un olvido, pero que al ir en seguida a ver el dinero y los papeles que el acusado conservaba en el ropero, lo halló todo en desorden, el ropero abierto y unas gotas de esperma esparcidas por allí, en adición al hecho de que había desaparecido el dinero; que el acusado procedió inmediatamente a dar cuenta del caso al cuartel de la policía; que el dinero robado ascendía a la cantidad de ciento sesenta dólares, incluyendo quince dólares que le había cobrado a Fernando Barreras; que más tarde el acusado cobró $37.50 que le entregó a Félix Rodríguez, agente de la compañía en la oficina del acusado, donde Rodríguez exigió que se le entregaran para él a su vez ingresarlos en la compañía; que en tres o cuatro ocasiones el acusado hizo gestiones para efectuar los depósitos en el banco, pero la compañía se opuso a ello para evitar así el pago de la comisión que cobraba el banco, y el acusado no podía pagarla de su bolsillo; que el día 1º de marzo, como a las ocho y media de la mañana, el acusado informó de este escalamiento a la compañía, por teléfono, solicitando que se enviara alguien allí, llegando poco después Félix Rodríguez a Juncos; que Félix Rodríguez manifestó su creencia de que el dinero había sido robado debido a la negligencia del acusado, pero le dijo al acusado que no se apurara, que él, Félix Rodríguez, creía que el acusado no iba a perder su colocación por ciento cincuenta dólares; que la zafra estaba próxima a comenzar y el acusado estaría en condiciones de

ganar más que suficiente para reembolsar los ciento sesenta dólares, sugestión que el acusado no aceptó por creer que ello perjudicaría su conducta, porque eso equivaldría a la admisión de un acto del cual el acusado no era culpable; que Rodríguez no le dió recibo alguno por los $37.50 que el acusado le entregó, y que Rodríguez nunca le daba recibos cuando venía a cobrar; que la transacción con Fernando Barreras ocurrió en febrero 28 y el acusado tenía la costumbre de enviar los informes a la compañía los lunes, y el 3 de marzo era miércoles; (en la repregunta) que el acusado sólo tenía en su oficina dinero y muebles, y que el dinero fué lo único que desapareció; que el acusado solía llegar a su oficina a las seis, seis y media o siete, y que la conversación telefónica la había tenido con Félix Rodríguez, informándole de lo que había ocurrido; que el acusado no le exigió a Félix Rodríguez recibo por los $37.50 debido a la confianza que el acusado tenía en dicho Rodríguez; que el acusado nunca sospechó que Félix Rodríguez haría una cosa semejante.

Andrés Agosto, trabajaba con el acusado y dijo que el lunes, el día siguiente al escalamiento, Félix Rodríguez llegó a Juncos y Justino le pagó en presencia del testigo $37.50, y que Félix volvió el martes.

Francisco Rivera, quien había comprado una nevera a plazos, fué otro testigo ocular de la entrega de los $37.50, y fija las dos de la tarde del martes como la hora de esta entrega.

Carlos García de la Noceda, un abogado en ejercicio, nos dice que Félix Rodríguez, en la oficina del testigo en Juncos y en presencia suya, le dijo al acusado: ''Yo no te quiero hacer daño, y te ayudo con cuarenta o cincuenta dólares a arreglar eso. Ayúdame a liquidar las cuentas y sigue trabajando con la compañía''; que Justino se negó a aceptar esta proposición porque tal aceptación equivaldría a admitir su culpabilidad.

Félix Rodríguez, en la prueba de refutación (*rebuttal*),

niega que Justino Rodríguez lo llamara por teléfono. Insiste en que la conversación a que se refiere García de la Noceda no tuvo lugar en la oficina de dicho abogado y dijo que mientras el testigo estaba con otro abogado, Villamil, García de la Noceda llamó al testigo y le propuso un arreglo en la oficina del juzgado de paz; que lo que querían era tapar el asunto.

De acuerdo con sus propias manifestaciones, Félix Rodríguez estaba a cargo de los agentes y empleados, así como de los cobros hechos en su distrito. También él parece haber sido más o menos responsable de la selección y empleo de Justino Rodríguez. El puede o no ser responsable del hecho de que la compañía se negara a permitir que su representante legal en Juncos depositara en el Roig Commercial Bank el dinero cobrado por él. De todos modos, Félix Rodríguez comparece a nombre de la compañía en el contrato sobre arrendamiento de servicios efectuado entre dicha compañía y Justino Rodríguez, y la manifestación de Félix Rodríguez mientras declaraba como testigo al efecto de que la compañía no se oponía a que se hiciera tal depósito, está directamente controvertida no sólo por la declaración del acusado, sino también por el agente anterior y representante local de la compañía en Juncos, y por el cajero del Roig Commercial Bank. Es más, Félix Rodríguez no niega que él requiriera del acusado que continuase prestando servicios como empleado de la compañía y que de lo que ganara en lo futuro cubriera el déficit en su cuenta, o que más tarde él, dicho Félix Rodríguez, en presencia de García de la Noceda, pidiera al acusado que le ayudara, al referido Félix Rodríguez, a arreglar la cuenta, y ofreciera contribuir con cuarenta o cincuenta dólares para este fin. Félix Rodríguez niega la conversación telefónica que se dice haber tenido lugar el primero de marzo, pero en este punto es contradicho, no sólo por el propio acusado sino por el telegrafista a cargo del servicio del teléfono público en Juncos. Félix Rodríguez niega que Justino Rodríguez le

entregara $37.50 durante una de las varias entrevistas que ocurrieron poco después del supuesto robo, pero aquí, además, esa negativa no sólo está en desacuerdo con la declaración del acusado, sino que también con la de otros testigos. En ausencia de alguna otra explicación, la conversación telefónica parece ser la razón más obvia para la visita hecha por Félix Rodríguez el día primero de marzo, pocas horas después del supuesto robo. Félix Rodríguez dice también que dentro de las veinticuatro horas de la referida visita, Justino Rodríguez cobró unos cincuenta dólares que él deseaba pagarle a otro empleado, pero no aparece que se le permitiera hacerlo así. Ni se ha probado que el dinero quedara en su poder. Bajo estas circunstancias, a menos que se considere el alegado pago de $37.50 como una admisión de que Justino retuvo $12.50 de los $50 mencionados por Félix Rodríguez, y fuera de alguna cuestión en cuanto al pago real de la referida suma de $37.50, parecería ser una inferencia razonable que los $50 que Félix Rodríguez dice deseaba Justino para pagárselos a su empleado o a un ayudante que no se ha demostrado fuera un empleado de la compañía fueron en realidad entregados a dicho Félix Rodríguez.

El hecho de que Justino Rodríguez, como agente de la compañía, cobró un dinero que dejó de entregarle a la compañía al ser requerido a ello, es indisputable. Para los fines de esta opinión puede admitirse que no se hizo pago alguno, y que la falta no explicada de pago al principal en el momento de exigirlo éste o después, del dinero cobrado por un agente, es bastante para sostener una condena por el delito de abuso de confianza. Queda la cuestión de la suficiencia de la explicación expuesta en el presente caso. El hecho de que el denunciante sea contradicho a cada paso es por demás significativo en cuanto a la relación de esa declaración con este punto.

Hay poco o ningún lugar a dudas de que el acusado dió cuenta de un escalamiento, muy de mañana el 1º de marzo,

de que había fuerte evidencia circunstancial tendente a probar que se había cometido un escalamiento y es un hecho que se había dado cuenta de otros delitos de esa índole perpetrados casi al mismo tiempo, uno de los cuales fué cometido en un edificio situado al frente del establecimiento del acusado. La teoría de la culpabilidad del acusado necesariamente envuelve la hipótesis de que él no sólo era culpable de abuso de confianza sino también de una tentativa deliberada para ocultar su delito y conjurar las sospechas. Asume que el acusado dejó una puerta lateral abierta, rasgó la tranca o cerrojo para indicar el uso de un instrumento de un escalador desde afuera, forzó el ropero en que se guardaban sus papeles y documentos, redujo el contenido de su llamada caja de seguridad al desorden, salpicó el piso con gotas de esperma, y entonces dió cuenta de un escalamiento. Así es que la controversia se reduce a una investigación en cuanto a si el acusado está o no diciendo la verdad sobre lo que encontró a su llegada a las seis de la mañana del 1º de marzo, o si él mismo preparó el escenario para la inspección ocular de la policía que sobrevino al recibirse la noticia en el cuartel.

La manifestación del acusado en cuanto al estado de la casa al llegar él allí en la mañana del 1º de marzo no ha sido ni corroborada ni contradicha. Félix Rodríguez es el único testigo que contradice al acusado en cuanto a cualquier extremo. Dondequiera que la declaración de uno de estos dos testigos viene en contacto con la de cualquiera de los otros testigos, la declaración del acusado es corroborada uniformemente, y la de Félix Rodríguez es contradicha con igual uniformidad, bien de plano o indirectamente, usualmente por más de uno de los otros testigos.

Esto no quiere decir, desde luego, como una conclusión inevitable, que sea cierto el relato que nos ha hecho el acusado en la silla testifical, o que la declaración del denunciante sea falsa. No incumbía al acusado establecer su inocencia con preponderancia de la prueba. Nos basta de-

cir que la prueba en conjunto no puede decirse, desde un punto de vista racional, que establece su culpabilidad fuera de una duda razonable.

Tomando en consideración la forma en que los respectivos testigos puedan haberse conducido en la silla testifical, lo más que puede decirse en favor de la acusación es que el juez sentenciador tenía, quizás, amplio fundamento sobre el cual basar una fuerte sospecha de que las manifestaciones del acusado acerca de este punto eran falsas y que lo que la policía encontró al inspeccionar el sitio fué una mera pantomima. Pero una sospecha de culpabilidad, por fuerte y bien fundada que sea, no es suficiente para sostener una convicción en un caso criminal. Si la prueba en conjunto no dió lugar a que surgiera una duda razonable en la mente de la corte inferior, entonces la corte inferior cometió error manifiesto al apreciar la prueba.

*Debe revocarse la sentencia apelada.*