RoBERTO H. Todd, peticionario y apelante, v. La Asamblea Municipal de San Juan, recurrida y apelada.

No. 4739.—*Sometido:* Noviembre 14, 1929. *Resuelto:* Abril 23, 1930.

*Feliú & La Costa,* abogados del peticionario; *R. Martínez Nadal,* y *Cayetano Coll y Cuchí,* abogados de los asambleístas.

El Juez Asociado Señor Aldrey, emitió la opinión del tribunal.

Celebrando la Asamblea Municipal de San Juan una sesión extraordinaria el 15 de agosto de 1928 se constituyó como tribunal en ejercicio de funciones judiciales y así constituída tomó el acuerdo de establecer procedimientos de impugnación (*impeachment*) contra el alcalde de la ciudad como consecuencia de una denuncia presentada contra él por un ciudadano; y también tomó el acuerdo de que mientras se

sustanciasen los cargos hechos al alcalde quedáse éste suspenso de empleo y de sueldo. Acudió entonces el alcalde ante la Corte de Distrito de San Juan estableciendo un recurso de *certiorari* para que fuese anulado el acuerdo instituyendo el procedimiento para su destitución y también el relativo a quedar suspenso de empleo y sueldo. La corte de distrito expidió el auto interesado y decretó al mismo tiempo que quedasen en suspenso estos acuerdos hasta la resolución definitiva de dicho auto. Reclamados los documentos necesarios y oídas las partes la corte escribió una opinión según la cual la asamblea municipal tiene facultad para instituir el procedimiento de destitución que decretó contra el alcalde a pesar de estar la asamblea municipal en una sesión extraordinaria y no haber sido tal asunto objeto de su convocatoria; y estimó que mientras se tramitase ese procedimiento no podía quedar el alcalde suspenso de empleo y de sueldo. En vista de esa opinión y por sus fundamentos la corte de distrito dictó sentencia declarando con lugar la solicitud de *certiorari* en cuanto se refiere al acuerdo o resolución suspendiendo al alcalde de empleo y de sueldo durante la sustanciación de los cargos formulados contra él y en su consecuencia anuló dicho acuerdo o resolución y dispuso que los documentos recibidos fueran devueltos para ulteriores procedimientos no inconsistentes con la opinión. En esa sentencia no se dejó sin efecto la suspensión decretada cuando el auto fué librado.

Contra esa sentencia interpuso apelación el alcalde y radicados los autos de esa apelación en este Tribunal Supremo obtuvo, mediante fianza, que el juez de este tribunal, Sr. Texidor, encargado de esta Corte Suprema durante sus vacaciones, dictase una resolución ordenando a los miembros de la asamblea municipal que no continuasen los procedimientos de destitución contra el alcalde hasta que la expresada apelación fuese resuelta por este Tribunal Supremo. A pesar de esa orden la asamblea municipal continuó dichos procedimientos para la destitución del alcalde y finalmente decretó su destitución. Entonces, a instancia del alcalde-apelante,

el mismo juez dictó durante las vacaciones del tribunal una orden para que los miembros de la asamblea municipal que habían continuado los procedimientos de destitución comparecieran ante este Tribunal Supremo el día que fué señalado para que mostrasen causa por la cual no debían ser castigados por desacato por no haber obedecido la expresada orden de suspensión de dichos procedimientos.

Lo relacionado aparece de las diligencias sobre desacato y de las que obran en los autos de apelación establecida por el alcalde contra la sentencia resolviendo su apelación en el *certiorari*.

El día señalado para la vista del desacato comparecieron los asambleístas citados y alegaron que no han cometido desacato alguno al tribunal ni al juez de turno en vacaciones porque el juez que dictó la orden de suspensión no tenía autoridad de ley para detener la ejecución de la sentencia de la corte de distrito; porque si esa orden se considera válida no tiene más alcance que suspender los efectos de la orden dictada por la corte de distrito, la cual en este caso se limitó a resolver únicamente sobre la suspensión de empleo y sueldo del alcalde; porque la sentencia de la corte de distrito no es de tal naturaleza que pueda ser detenida en su ejecución por medio de una orden de *supersedeas;* porque esa sentencia no era ejecutoria sino en cuanto a la suspensión de empleo y sueldo del alcalde; porque al llevar a cabo la acción y juicio contra el alcalde la asamblea municipal no le privó de ningún derecho adquirido puesto que la sentencia que recayera no era ejecutoria sino después de confirmada en la apelación correspondiente; y porque los asambleístas actuaron de buena fe y bajo consejo de abogado.

En vista de esa contención este tribunal se limitó a oír la cuestión previa de jurisdicción suscitada para si es resuelta en contra de los que la han propuesto darles una oportunidad para entrar en las demás circunstancias del caso.

Por lo expuesto se ve que el auto de *certiorari* interpuesto

por el alcalde ante la Corte de Distrito de San Juan planteaba dos cuestiones: una, que es nulo el acuerdo de la asamblea municipal disponiendo que se iniciara el procedimiento de impugnación (*impeachment*), porque siendo una sesión extraordinaria no podía la asamblea tratar otros asuntos que los que fueron objeto de su convocatoria, y ese asunto no lo fué; otra, que es ilegal el decretar su suspensión de empleo y sueldo mientras se tramitasen esos procedimientos. La corte de distrito consideró que el alcalde no tenía razón en la primera cuestión pero sí en la segunda y en consecuencia su fallo sólo declara con lugar el *certiorari* en cuanto a la segunda cuestión, por lo que la apelación del alcalde contra ella no puede referirse sino a la parte que puede serle perjudicial, o sea, en cuanto no anula el acuerdo disponiendo que se tramiten los procedimientos para su destitución.

Según el artículo 295 del Código de Enjuiciamiento Civil se puede establecer apelación contra sentencia definitiva pronunciada en un pleito o procedimiento especial; y como el de *certiorari* tiene el carácter de procedimiento especial, la sentencia definitiva dictada en él puede ser apelada, *American R. R. Co.* v. *Corte Municipal*, 16 D.P.R. 242. Aunque sobre esto no existe discusión en este caso, es conveniente dejarlo consignado porque es base para considerar otra cuestión.

También dispone el artículo 297 que formalizada una apelación producirá el efecto de suspender todo procedimiento en la corte inferior con respecto a la sentencia u orden apelada o a las cuestiones comprendidas en ella, aunque la corte inferior podrá proseguir el pleito en lo que respecta a cualquier extremo no comprendido en la apelación. Por su parte el artículo 298 del mismo código después de hacer referencia a la regla precedente exceptúa de ella tres casos, ninguno de los cuales es la apelación contra sentencia en auto de *certiorari*.

De acuerdo, pues, con esos preceptos legales la apelación

en este caso suspendió *ex proprio vigore* el cumplimiento de la sentencia apelada (*Pescay* v. *Texidor, Juez de Distrito,* 26 D.P.R. 171) y, por consiguiente, atacada la validez de la orden o acuerdo de la asamblea municipal disponiendo que se tramitasen los procedimientos de impugnación del alcalde, librado por la corte de distrito el auto de *certiorari* y decretada la suspensión de dicho acuerdo, la apelación contra la sentencia que no anuló dicho acuerdo produjo el efecto de que continuase el *status quo* creado por el libramiento del auto de *certiorari,* y, por tanto, mientras se resolviese esa apelación no podía cumplirse el expresado acuerdo, pues la apelación trajo ante este tribunal Supremo la cuestión a decidir si tal acuerdo es nulo o no; y, mientras se resolviese, el alcalde tiene derecho a no verse sometido a dicho procedimiento de destitución.

Sentado lo que precede, veamos ahora si este Tribunal Supremo o un Juez Asociado de él durante las vacaciones de aquél podía librar en este caso, después de perfeccionada la apelación, una orden para que la asamblea municipal no continuase los procedimientos de destitución mientras la apelación sea resuelta por nosotros.

No puede haber duda alguna de que perfeccionada una apelación queda trasladada la jurisdicción sobre el asunto de la corte de distrito a este Tribunal Supremo (3 C. J. página 1252, sección 1366) por lo que desde que esta apelación fué perfeccionada perdió la corte de distrito la jurisdicción que en el asunto tenía y desde entonces la adquirió este tribunal para resolver la apelación.

No existe en la ley procepto alguno que expresamente disponga que este Tribunal Supremo pueda librar órdenes (*supersedeas*) para que la sentencia apelada no sea cumplida, lo que no es extraño por haberse dispuesto terminantemente en el artículo 297, *supra,* que la apelación suspende los efectos de la sentencia y por esto no tenía que decir que este Tribunal Supremo podía decretar la suspensión de la

ejecución de la sentencia; pero si se diera el caso, como en el presente, de que por no haber declarado la sentencia nulo determinado acuerdo o resolución objeto del *certiorari* y a pesar de la apelación se tratase de cumplir la sentencia de la corte inferior, entonces este tribunal tiene poder inherente para hacer efectiva su jurisdicción de apelación impidiendo, mediante la correspondiente orden, que la sentencia apelada sea cumplida, de acuerdo con el artículo 36 del Código de Enjuiciamiento Civil, según el cual cuando por él o por otra ley se confiere jurisdicción a una corte o funcionario judicial se le confieren también todos los medios necesarios para hacerla efectiva; y en el ejercicio de ella, si el procedimiento no estuviera especialmente señalado en el código o en otra ley, podrá adoptarse cualquier otro procedimiento o modo adecuado que parezca estar más en armonía con el espíritu de ese código. Por consiguiente, como no sólo el espíritu del código sino sus mismos preceptos son que la sentencia apelada no sea cumplida mientras la apelación sea resuelta, no puede haber duda de que este tribunal está facultado por dicho artículo 36 para librar órdenes que hagan efectiva su jurisdicción en ese sentido, impidiendo el cumplimiento de la sentencia apelada. En el caso de *Farmers State Bank of Riverton* v. *Hann*, 213 Pac. 361 (Superior Court of Wyoming), se dice lo siguiente: "Uno de los poderes inherentes de la Corte Suprema es que puede conceder *supersedeas* o una orden suspendiendo la ejecución o la seguridad (*enforcement*) de una sentencia de la que se ha apelado, en términos y condiciones apropiados, después que ha adquirido jurisdicción, si se creyere necesario para hacer efectivo el completo ejercicio de tal jurisdicción." Y en el caso de *Wood* v. *Board of Fire Commissioners of the City of Los Angeles*, 195 Pac. 739, se declaró que: "La corte de distrito de apelaciones en el ejercicio de su jurisdicción posee el poder inherente de suspender los procedimientos acerca de la sentencia apelada, aunque no haya disposición estatutoria para tal suspensión." En igual sentido son los casos de *Lucken-*

*back* v. *Lace*, 204 Pac. 591, 188, Cal. 175; *Union Sawmill Co.* v. *Felsentahl Land,* 84 Ark. 494 106 S. W. 676; y de *American Strawboard Co.* v. *Indianapolis Water Co.,* 46 U. S. App. 526. En el caso de *Axtmayer* v. *Körber,* 36 D.P.R. 962, esta Corte Suprema decretó la suspensión del cumplimiento de una sentencia apelada, haciendo aplicación de los artículos 36 y 297 del Código de Enjuiciamiento Civil.

Demostrado que este Tribunal Supremo puede librar órdenes de suspensión del cumplimiento de una sentencia cuya apelación está pendiente ante él, veamos ahora si tal orden puede ser librada por uno de los jueces durante las vacaciones del tribunal para impedir que se desvirtúe, destruya o burle un estado de derecho existente, creado por la ley.

En uno de los casos citados por los asambleístas, el de *In re Talbot,* 58 Ind. 426, 108 W. E. 241, tratando de ciertos poderes inherentes a las cortes de justicia, se dice:

"Se observará que el poder ejercitado por la corte en vacaciones o por jueces individuales de una corte compuesta de varios miembros es un poder incidental de la corte como corte y no un poder original o autoridad dada a un miembro de la corte para ser ejercitado independientemente de la corte compuesta por todos sus miembros. El ejercicio de tal poder por un miembro de la corte en tal caso es el ejercicio del poder de la corte, y tal miembro individual actúa en tal asunto como y por la corte y puede ejercer ese poder solamente como la misma corte pudiera hacerlo. En un sentido es un poder de emergencia dado al miembro individual de la corte para ser ejercitado por la corte en auxilio de su jurisdicción o para beneficio de los asuntos pendientes ante ella, cuando por alguna razón la corte no puede actuar como corte."

Desde 1902, dos años antes de ser promulgado el Código de Enjuiciamiento Civil, está en vigor en esta Isla la ley de aquella fecha (Estatutos Revisados, pág. 258) que, según fué enmendada por la Ley No. 4 de 10 de marzo de 1914 (pág. 141 de las de ese año) dispone que el Tribunal Supremo celebrará, cinco sesiones al año, principiando la cuarta el primer lunes de julio, continuando por cuatro semanas, y

comenzando la quinta el primer lunes de noviembre; de modo que hay un período de unos tres meses durante los cuales este tribunal no tiene sesiones, resultando ese período como vacaciones de este tribunal. Y dispone también esa ley de 1902 que uno de los jueces del Tribunal Supremo permanecerá siempre en la capital cuando el tribunal no estuviere en sesión. No dice más la ley. Pero como los tribunales deben interpretar las leyes de modo que tengan efecto, si esto es posible, ya que no deben partir de la base de que sean promulgadas leyes sin objetivo alguno, tenemos que considerar esa ley en relación con los motivos de la misma; y como los tribunales han sido creados para administrar justicia; como según la ley de 1902 entre los distintos períodos de sesiones de este tribunal quedan algunos días o semanas, y entre el cuarto y el quinto unos tres meses, sin que el tribunal pueda celebrar sesiones, nos parece obvio concluir que al disponer la ley que uno de los jueces de este tribunal permanecerá en la capital (o sea en San Juan, que es el sitio del tribunal) cuando no esté en sesión, ha de tener algún fin judicial su permanencia obligatoria en esta ciudad pues de otro modo sería una disposición sin sentido práctico alguno, y por esto entendemos que el objeto de tal disposición es para que los asuntos ante el tribunal no queden totalmente paralizados y para que en consecuencia pueda ese juez actuar por el tribunal en cuestiones que no envuelvan la facultad propia del tribunal de resolver controversias entre las partes sino para dictar aquellas resoluciones sobre prórrogas de término y otras similares, como ha sido la costumbre y práctica en este tribunal durante veintiséis años; y opinamos que también para dictar órdenes que hagan efectiva la ley escrita y la jurisdicción de apelación de este tribunal disponiendo lo necesario, según la circunstancia de cada caso, para que no se viole el derecho reconocido por la ley a todo apelante de que la sentencia no sea cumplida mientras sea resuelta su apelación. Por esto creemos que puesto en conocimiento del juez de esta corte en vacaciones que a pesar de la ley precep-

tiva de que la apelación suspende el procedimiento en cuanto a la sentencia u orden apelada, la parte apelada trataba de cumplirla en la parte que no anuló uno de los acuerdos impugnados en el *certiorari*, dicho juez estaba facultado para librar la orden de suspensión. Si no tuviera tal facultad en los períodos en que este tribunal no celebra sesiones, entonces podría burlarse el derecho de la parte apelante, ya vendiendo los bienes, como se intentó hacer en el caso de Axtmayer, ya tramitando el procedimiento de destitución y decretando la destitución de un alcalde, como ha ocurrido en este caso, sin ser resuelto definitivamente por nosotros. En el caso *Ex parte Pearl Roller Mill Co.* de la Corte Suprema de Alabama, 45 So. 423, se solicitó de ella un auto de *mandamus* para que se ordenase la eliminación de una orden negándose a eliminar un auto de suspensión (*supersedeas*) de ejecución de una sentencia, entre otros motivos, porque ese auto fué expedido por un juez de la corte de circuito en las vacaciones; y al ser negado el auto de *mandamus* declaró la Corte Suprema que los jueces de la corte de circuito tienen autoridad en vacaciones para librar dicho auto para ser devuelto a la corte. En 3 Corpus Juris, pág. 1288, se dice que la facultad para decretar una suspensión (*supersedeas*) o paralización, existe en la corte de apelación o en un juez de ella, con tal que la jurisdicción sobre el asunto haya sido adquirida por la corte de apelación, sujeto esto a restricciones estatutorias, que en nuestras leyes no existen; y en la nota 49 de esa obra se citan en apoyo de esa afirmación resoluciones del Tribunal Supremo de los Estados Unidos y de muchos Estados.

En el caso de *State ex rel. Barnard* v. *Board of Education,* 19 Wash. 8, 52 Pac. 317, 40 L.R.A. 317, 67 Am. St. Rep. 206, se libró un auto de *certiorari* y luego, sosteniendo una excepción previa presentada, se anuló dicho auto (*quashed*) y en la apelación contra esa resolución dijo la Corte Suprema de aquel estado que ella, en el ejercicio de su discreción, por virtud de sus poderes inherentes como

tribunal de apelación, puede librar una orden de suspensión (*supersedeas*) para preservar el *status quo* de las partes, pendientes la determinación de la apelación en sus méritos. Esa doctrina fué citada en los casos posteriores de *State ex rel. Bringgold* v. *Burns,* 21 Wash. 227 y en el de *State ex rel. Gawley* v. *Bremerton,* 32 Wash. 510, aunque en éstos por determinados motivos no fué librada la orden de suspensión.

En el caso de *Waterman* v. *Raymond,* 5 Wis. 185, citado en 67 A.S.R. 717, se dijo que un juez de la Corte Suprema de Wisconsin tiene poder, en vacaciones, para dictar una orden provisional de suspensión de los procedimientos (*stay of proceedings*) en la corte inferior para permitir hacer o renovar, si es necesario, una moción similar durante el término.

En el caso de *El Pueblo* v. *De Jesús,* 36 D.P.R. 965, este tribunal confirmó la orden de suspensión de ejecución de la sentencia dictada en vacaciones por uno de sus jueces. El caso de *certiorari* de *Benítez* v. *Corte de Distrito de Humacao,* que fué resuelto definitivamente en marzo de 1927 (37 D.P.R. 450), es apropiado para demostrar que la intención del legislador fué que el juez de esta corte, que ha de permanecer en esta capital cuando el tribunal no esté en sesión, ha de actuar por ella en ciertos casos, pues dictada sentencia en rebeldía y librada orden para su ejecución por la corte de distrito fué interpuesto auto de *certiorari* para que se declarase nula esa sentencia. El auto de *certiorari* no podía ser librado sino por el tribunal que estaba en vacaciones, pero uno de sus jueces decretó, mediante fianza, la suspensión de la ejecución de la sentencia impugnada. Esa suspensión no fué atacada por la parte a quien perjudicaba, y habiendo sido expedido el auto de *certiorari* al reunirse el tribunal, fué luego resuelto declarando nula la orden de ejecución librada para el cumplimiento de la sentencia. Si el juez en vacaciones no hubiese podido decretar la suspensión de la ejecución, ¿cuántos perjuicios y litigios no se hubiesen originado en ese caso? También la resolución de

este Tribunal Supremo dictada al decidir la apelación interpuesta por el alcalde contra el acuerdo de la Asamblea Municipal instituyendo el procedimiento de destitución (*impeachment*) por la que se declara nulo dicho acuerdo, (*Todd v. Asamblea Municipal,* 39 D.P.R. 140), demuestra no sólo la justicia de la orden impidiendo que tal acuerdo fuese cumplido mientras se resolvía la apelación interpuesta sino también lo razonable de que este tribunal tenga autoridad para ordenar suspensión de procedimiento (*supersedeas*) mientras se resuelve la apelación, y en sus vacaciones el juez encargado del tribunal.

La contención de los asambleístas de que ni esta corte ni uno de sus jueces puede decretar que la asamblea municipal no instituya procedimento contra el alcalde de acuerdo con el artículo 29 de la Ley Municipal de 1928 carece de base pues la orden de *supersedeas* en este caso no declara que la asamblea municipal no tenga esa facultad sino que se ha limitado a suspender el ejercicio de la misma mientras se resuelva la apelación del alcalde sobre si una asamblea municipal reunida en sesión extraordinaria puede ejercitar tal poder sin haber sido objeto de su convocatoria.

Por todo lo expuesto, la alegación de que este Tribunal Supremo no tiene jurisdicción para librar orden de suspensión de ejecución de la sentencia apelada (*supersedeas*) y la de que tampoco la tiene uno de sus jueces en vacaciones, deben ser declaradas sin lugar.

Como consecuencia de las conclusiones a que hemos llegado procedería ahora continuar este procedimiento de desacato, pero en vista de que hemos tardado bastante tiempo en resolver las cuestiones suscitadas, por la naturaleza de ellas y por el gran número de otros asuntos que tenemos, aceptaremos en este caso las manifestaciones hechas por los citados de desacato respecto a no haber tenido intención de desobedecer la orden de este tribunal dictada por uno de sus jueces y la de que obraron por consejo de abogado, y archivaremos estas actuaciones.

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SR. WOLF

Roberto H. Todd, Alcalde de San Juan, era el peticionario en un recurso de *certiorari* instituído ante la Corte de Distrito de San Juan, habiendo tenido en parte éxito y en parte no. El objeto del recurso era anular procedimientos de impugnación pública de la Asamblea Municipal de San Juan. Apeló oportunamente para ante esta corte, pero en la época en que se interpuso el recurso esta corte estaba en vacaciones. Con el fin de suspender procedimientos ulteriores de la asamblea municipal mientras se tramitaba la apelación, se presentó una solicitud al Juez Asociado de esta corte Sr. Texidor, para impedir que la asamblea municipal prosiguiera el caso de impugnación por ella iniciado. La orden así solicitada fué expedida por el Juez Texidor en 25 de septiembre de 1928. En 9 de octubre el Juez Texidor expedió una orden para mostrar causa por la cual la asamblea municipal, o más bien, los miembros que la constituían, no debían ser castigados por desacato, ya que ellos habían proseguido el procedimiento de impugnación. En la orden se decía que los querellados debían comparecer ante la corte en pleno, y la vista fué celebrada ante nosotros el día 14 de noviembre de 1928. Las dificultades existentes entre el alcalde y la asamblea municipal dieron lugar a varios procedimientos ante esta corte, todos los cuales han sido resueltos a excepción del presente.

No hay duda alguna de que al apelar de la orden del Juez Texidor, fechada septiembre 28, 1928, los querellados en la orden para mostrar causa no cambiaron su situación legal. En mi opinión no hay apelación posible para ante la corte en pleno de la actuación de uno de los jueces individuales de esta corte, a menos que el estatuto así lo provea. Ningún estatuto concede tal derecho en un caso como el presente.

Tampoco puede existir duda alguna de que con motivo de la apelación interpuesta por el alcalde Todd esta corte adquirió jurisdicción del procedimiento de *certiorari*. De

ahí se desprende necesariamente que si la apelación de una orden dictada en un recurso de *certiorari* suspende los procedimientos en la corte inferior, entonces la mera apelación suspendía la actuación de la corte inferior si ella había dado algún paso capaz de ser suspendido. Es conveniente decir inmediatamente que en el presente caso la corte inferior en su sentencia final se negó a ordenar, o no ordenó, a la asamblea municipal que desistiera de celebrar el procedimiento de impugnación pública.

Los querellados dicen que la orden de la Corte de Distrito de San Juan fué para anular la actuación de la asamblea municipal en tanto en cuanto dicha asamblea trataba de suspender de empleo y sueldo al alcalde, pero que dicha orden no contenía ningún pronunciamiento que limitara o restringiera los derechos de nadie. Dicha decisión sí ordenaba la devolución a la asamblea de los documentos elevados a la corte de distrito. Los autos que tenemos a la vista no revelan qué documentos eran éstos.

Ahora bien, es de concebirse fácilmente, bajo el *certiorari* clásico, que cuando una corte de distrito anula un auto de *certiorari* originalmente expedido por ella contra una corte municipal y el peticionario apela, tal recurso suspende la devolución de los autos a la corte municipal, asumiendo, como generalmente sería el caso, que dichos autos hayan sido elevados a la corte de distrito. El efecto total sería que la corte municipal no podría proseguir el caso.

No fué el *certiorari* clásico el presentado a la corte de distrito. Según hemos indicado en varias decisiones, éste es un remedio especial para anular ordenanzas o actuaciones de las asambleas municipales de conformidad con el artículo 65 de la Ley Municipal, Leyes de 1924, pág. 107. Este dice así:

"Las cortes de distrito tendrán jurisdicción a instancia de parte perjudicada:

"(a) Para anular o revisar cualquier acto legislativo o administrativo de la asamblea municipal, del alcalde o de los demás funcio-

narios municipales que lesione derechos constitucionales de los querellantes o sea contrario a la Ley Orgánica o las leyes de Puerto Rico, mediante *certiorari;*

"(b) Para suspender mediante *injunction* la ejecución de cualquier ordenanza, acuerdo, resolución u orden que lesione derechos garantizados por la constitución o las leyes insulares;

"(c) Para compeler, mediante auto de *mandamus* el cumplimiento de deberes ministeriales por los funcionarios municipales;

"(d) Para conceder, mediante juicio ordinario, compensación de daños y perjuicios a los perjudicados por actos u omisiones de los funcionarios municipales, por malicia, negligencia o ignorancia inexcusables.

"En los dos primeros casos la parte perjudicada podrá solamente establecer la demanda correspondiente dentro del plazo de 30 días, a contar de la fecha en que el acto ejecutivo o administrativo haya sido realizado o que la ordenanza, acuerdo, resolución u orden hayan sido publicados o comunicados a la parte querellante."

¿Qué es lo que se eleva a la corte de distrito al expedirse tal auto? Apenas lo sabe uno, y los autos de este caso no lo revelan. Ni aun sabemos si cuando un auto de *certiorari* es expedido en esa forma, su expedición suspende *pendente lite* sin más el efecto del acto legislativo o administrativo que se trata de anular.

Supongamos que en cualquier sitio y en cualquier momento alguien desee atacar cualquier disposición legislativa como inconstitucional o ineficaz. Se instituye el recurso o el procedimiento más adecuado, pero ¿podría concebirse que la actuación de un solo individuo al atacar la validez de una ley, puede suspender una disposición de la Legislatura? La analogía es aplicable *mutatis mutandi* a los actos de una asamblea municipal. La eficacia de la actuación de una asamblea municipal no queda anulada o suspendida por la mera expedición de un auto de *certiorari.* La disposición aún tiene fuerza de ley. La anulación o suspensión debe venir de la corte misma, independientemente de la expedición del auto de *certiorari,* quizá mediante *injunction* o cualquier otro recurso.

En el presente caso la Corte de Distrito de San Juan

rehusó anular los procedimientos de la asamblea municipal en tanto en cuanto ésta instituyó un procedimiento de impugnación contra el Alcalde Todd. *A fortiori,* por lo que los autos revelan, nada fué suspendido que ya antes no había sido suspendido. El caso es similar a un *injunction* preliminar expedido y posteriormente disuelto. La apelación no mantiene con vida dicho *injunction* preliminar a menos que el estatuto o una orden especial de la corte así lo disponga. 3 C. J. 1405. Si fuera de otro modo, las cortes estarían más renuentes que nunca a expedir autos preliminares de *injunction.*

El efecto de la apelación interpuesta en este caso no era suspender la actuación de la asamblea municipal en el procedimiento de impugnación pública. La apelación no preservó el *status quo* en vista de que nada, por lo que revelan los autos, fué suspendido en la corte inferior.

Esta corte carecía de autoridad para ordenar la suspensión de los procedimientos de impugnación pública mientras estuviese pendiente el recurso de apelación, a menos que dichos procedimientos hubiesen sido suspendidos antes, y sostengo que no lo habían sido.

De ahí se desprende necesariamente que el juez de turno de esta corte no pudo hacer lo que la misma corte no podía hacer.

Asumiendo, sin embargo, que esta corte tuviera tal facultad, nada hay en la ley que autorice a un solo juez a actuar por la corte. Las prórrogas concedidas por el juez de turno no tienen analogía. Aun durante los términos de la corte el Juez Presidente, sin consultar a los demás jueces, de conformidad con una larga práctica que ha sido consentida por la corte, actúa por sí solo. Durante las vacaciones el juez de turno es Juez Presidente interino. Las disposiciones de la ley que requieren que uno de los jueces permanezca en San Juan, tal vez han sido adoptadas con el fin de tener un Juez Presidente interino, o para proveer autos como el de hábeas corpus o cuestiones libradas por un solo juez,

que luego pasan a la corte. Las actuaciones de los jueces sentenciadores durante las vacaciones no tienen analogía. Nada hallo en la ley que autorice a un juez individual de esta corte a actuar a nombre de ella y a suspender procedimientos que por otra parte no han sido suspendidos debidamente.

Si, según sostienen los letrados del alcalde Todd, la apelación suspendió las actuaciones de la asamblea municipal, entonces no había necesidad de que se expidiera una nueva orden de *supersedeas*.

La orden fué expedida en este caso por dejar de obedecer el *supersedeas* del Juez Texidor y no, por lo menos en cuanto a sus términos, por dejar de suspender los procedimientos debido a la apelación.

*La orden para mostrar causa debe ser desestimada.*