Méndez & Compañía, peticionaria, *v.* Corte de Distrito de San Juan, Hon. Marcelino Romany, Juez, demandada.

Núm. 1225.—*Sometido:* Diciembre 23, 1940. *Resuelto:* Enero 15, 1941.

*Dubón & Ochoteco* y *Otero Suro & Otero Suro,* abogados de la pe-
ticionaria; *Víctor M. Rivera Colón,* abogado del interventor,
demandado en el pleito principal.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del
tribunal.

El 12 de enero de 1940 la Corte Municipal de San Juan,
Sección Tercera, dictó sentencia a favor del demandante en
pleito de desahucio seguido por *Fructuoso Vázquez* v. *Vicente
L. Jiménez.* Apeló Jiménez para ante la Corte de Distrito
de San Juan y con fecha 18 de abril siguiente fué desesti-
mado el recurso por no haberlo perfeccionado el apelante pres-
tando la correspondiente fianza. Firme así la sentencia de
la corte municipal, fué sustituído Vázquez por la aquí peti-
cionaria Méndez & Cía. Interpuso entonces el demandado
Jiménez recurso de *certiorari* en la Corte de Distrito de San
Juan, solicitando la nulidad de la sentencia de desahucio, y
el Juez La Costa, de dicho tribunal, expidió el auto, anulán-
dolo después de oír a las partes. Apeló Jiménez para ante
este tribunal de la resolución de la corte de distrito que anuló
el auto de certiorari. Hallándose pendiente el recurso de
apelación, el márshal de la corte municipal ejecutó la senten-
cia lanzando a Jiménez de la finca objeto de la acción de
desahucio. Radicó Jiménez dos mociones en la corte de dis-
trito: en la primera, solicitó que el márshal de la Corte Muni-
cipal de San Juan fuese castigado por desacato por haber
ejecutado la sentencia no obstante hallarse pendiente la ape-
lación interpuesta contra la resolución que anuló el auto de
certiorari; en la segunda, solicitó que se ordenase por la
corte de distrito que el demandado en el caso de desahucio
fuese restituído en la posesión del inmueble por el mismo
motivo de hallarse pendiente el indicado recurso de apelación.

La Corte de Distrito de San Juan, por su Juez Hon. Marcelino Romany, desestimó la primera de las dos mociones, o sea aquélla en que se solicitaba que el márshal fuese castigado por desacato, y declaró con lugar la segunda, dictando una resolución el 25 de noviembre último que en lo pertinente dice así:

"Por los fundamentos de su opinión unida a los autos de este caso, la corte dicta resolución . . . Declara con lugar la moción presentada por el querellante Vicente L. Jiménez y dicta una orden dirigida al Márshal de la Corte Municipal de San Juan, Sección Tercera, y a la interventora Méndez & Cía., para que se abstengan, apercibidos de desacato, de intervenir, interrumpir o impedir la posesión del peticionario Vicente L. Jiménez, sobre la casa objeto del pleito principal de desahucio, hasta tanto no se resuelva por la Corte Suprema la apelación establecida por aquél de la sentencia dictada por esta corte el día 3 de julio de 1940, anulando el auto de *certiorari* expedido en este caso."

Para que revisemos la orden transcrita, interpuso el peticionario el presente recurso de certiorari.

La cuestión a resolver en este caso es la de si el recurso de apelación interpuesto contra una resolución de la corte de distrito anulando un auto de certiorari expedido por dicha corte para revisar procedimientos en un caso de desahucio seguido en la corte municipal, suspende la ejecución de la sentencia en el caso de desahucio.

La corte inferior basó la resolución recurrida principalmente en el caso de *Todd* v. *Asamblea Municipal,* 40 D.P.R. 835, 839, donde se dijo:

"Según el artículo 295 del Código de Enjuiciamiento Civil se puede establecer apelación contra sentencia definitiva pronunciada en un pleito o procedimiento especial; y como el de *certiorari* tiene el carácter de procedimiento especial, la sentencia definitiva dictada en él puede ser apelada, *American R. R. Co.* v. *Corte Municipal,* 16 D.P.R. 242. Aunque sobre esto no existe discusión en este caso, es conveniente dejarlo consignado porque es base para considerar otra cuestión.

"También dispone el artículo 297 que formalizada una apelación producirá el efecto de suspender todo procedimiento en la corte inferior con respecto a la sentencia u orden apelada o a las cuestiones comprendidas en ella, aunque la corte inferior podrá proseguir el pleito en lo que respecta a cualquier extremo no comprendido en la apelación. Por su parte el artículo 298 del mismo Código después de hacer referencia a la regla precedente exceptúa de ella tres casos, ninguno de los cuales es la apelación contra sentencia en auto de *certiorari*.

"De acuerdo, pues, con esos preceptos legales la apelación en este caso suspendió *ex proprio vigore* el cumplimiento de la sentencia apelada (*Pescay* v. *Texidor, Juez de Distrito,* 26 D.P.R. 171) y, por consiguiente, atacada la validez de la orden o acuerdo de la asamblea municipal disponiendo que se tramitasen los procedimientos de impugnación del alcalde, librado por la corte de distrito el auto de *certiorari* y decretada la suspensión de dicho acuerdo, la apelación contra la sentencia que no anuló dicho acuerdo produjo el efecto de que continuase el *status quo* creado por el libramiento del auto de *certiorari,* y, por tanto, mientras se resolviese esa apelación no podía cumplirse el expresado acuerdo, pues la apelación trajo ante este Tribunal Supremo la cuestión a decidir si tal acuerdo es nulo o no; y, mientras se resolviese, el alcalde tiene derecho a no verse sometido a dicho procedimiento de destitución."

Nada induce más a error en la interpretación de las leyes que tratar de aplicarlas como si de fórmulas matemáticas se tratase. El Derecho no es una ciencia exacta como las matemáticas. Es una ciencia social y por consiguiente al interpretar preceptos legales es preciso determinar previamente cuál fué el propósito perseguido por el legislador al aprobar la ley en cuestión. En la obra *"An Introduction to the Philosophy of Law",* pág. 100, el Dean Pound señala los pasos necesarios para adjudicar una controversia de acuerdo con la ley. Dice así:

"Tres pasos están envueltos en la adjudicación de toda controversia legal: (1) determinar la ley asegurándose cuál de las muchas reglas en el sistema legal es la aplicable, y si ninguna es aplicable, crear una regla para el caso (que puede servir o no para casos posteriores), sirviéndose de principios legales conocidos; (2) interpre-

tar la regla así seleccionada o escogida, esto es, determinar su significado según fué redactada, con respecto al propósito que la inspiró; (3) aplicar al caso en controversia la regla así encontrada e interpretada.''

Sigamos la pauta indicada en la obra citada. Los preceptos legales aplicables a la causa en controversia son los artículos 297 y 298 del Código de Enjuiciamiento Civil. Dichos artículos literalmente dicen así:

''Art. 297. Formalizada una apelación, producirá el efecto de suspender todo procedimiento en la corte inferior, respecto a la sentencia u orden apelada, o a las cuestiones comprendidas en ella,. pero la corte inferior podrá proseguir el pleito en lo que respecta a cualquier extremo del mismo no comprendido en la apelación.

''Art. 298. La formalización de un recurso de apelación suspende los procedimientos en la corte inferior en cuanto a la sentencia u orden apelada, salvo cuando dispusiere la venta de cosas susceptibles de pérdida o deterioro, en cuyo caso la corte inferior podrá ordenar que se vendan dichas cosas, depositándose su importe hasta que dicte su sentencia la corte de apelación. Y salvo, también, cuando la sentencia declare al demandado culpable de usurpación, intromisión o ilegal desempeño de un cargo público, civil o militar, en esta Isla. Y salvo, asimismo, cuando la orden conceda o rehuse conceder, un cambio de lugar para la celebración del juicio.''

Determinada la ley aplicable, pasemos ahora a la segunda etapa, es decir, interpretemos dichos preceptos teniendo en cuenta el propósito perseguido por el legislador.

¿Qué fin persiguió el legislador al prescribir que el recurso de apelación suspende los procedimientos en la corte inferior? Sencillamente evitar que mientras se tramita el recurso la parte apelada continúe en la corte inferior los procedimientos conducentes a la ejecución de la sentencia u orden dictada a su favor. En otras palabras, el propósito de suspender los procedimientos no es otro que mantener el *status quo* prevaleciente cuando se dictó la sentencia u orden apelada, de forma que el recurso incoado no pueda resultar puramente académico o ilusorio. De ahí que la jurisprudencia uniformemente haya establecido a estos efectos la dife-

rencia entre aquellas órdenes o sentencias que no requieren ulteriores procedimientos para hacerlas efectivas (*self-exe-cuting*) y aquéllas que precisan posteriores trámites para su ejecución o cumplimiento. Las primeras, las que ningún procedimiento ulterior requieren para hacerlas efectivas, no alteran el *status quo* existente en la fecha en que fueron dictadas y por lo tanto no puede decirse propiamente que quedan suspendidas al establecerse recurso de apelación. Por el contrario, las otras, las que requieren ulteriores procedimientos, sí se suspenden, pues de otro modo la parte apelada podría llevar adelante el caso y hacer ilusorio o académico el recurso interpuesto. Un ejemplo hará evidente nuestra proposición: En pleito seguido por *A* contra *B* en cobro de dinero, la corte desestima la demanda. *A* interpone recurso de apelación. *B* nada tiene que hacer para hacer efectiva su sentencia. El *status quo* que existía antes de dictarse aquélla, prevalece después de dictada, ya que *B* ningún procedimiento posterior tiene que establecer para hacer efectiva una sentencia que declara sin lugar la demanda contra él interpuesta. Por el contrario, si en el ejemplo anterior la corte declara con lugar la demanda de *A* y condena a *B* a pagarle determinada suma de dinero, al apelar *B* suspende los procedimientos, pues de lo contrario, mientras se sustancia la apelación, *A* puede solicitar orden de ejecución y cobrar su sentencia antes de que la corte de apelación resuelva el recurso.

En el caso de *De Garmo* v. *Shenberg*, 102 P. (2) 522 (Cal. 1940), por vía de ilustración se cita el caso de *Walls* v. *Palmer*, 64 Ind. 493, 496, en el cual se dictó sentencia suspendiendo al peticionario del ejercicio de la abogacía. Apeló el peticionario y alegaba entonces que la apelación por él interpuesta le restituía el derecho de ejercer su profesión mientras se sustanciaba el recurso. Resolvió la corte, sin embargo, que conceder tal efecto a la apelación equivaldría a revocar la sentencia de suspensión antes de que la apelación fuese judicialmente resuelta, agregando:

"El efecto de la apelación y del *supersedeas* es dejar en *status quo* la sentencia tal como ha sido dictada y evitar ulteriores procedimientos contra el peticionario. La mera interposición del recurso no revoca, suspende o sustituye la sentencia. Ésta permanece intacta. No requiere ulteriores procedimientos para su ejecución. Se ejecuta por sí misma excepto en lo que respecta al cobro de las costas, que queda en suspenso en virtud de la apelación y *supersedeas*. El único efecto de una apelación mientras se perfecciona y sustancia es detener la ejecución de la sentencia apelada." (Pág. 525.)

El auto de certiorari que expidió el Juez La Costa para revisar los procedimientos en el caso de desahucio en la corte municipal, fué anulado más tarde, como hemos visto, después de oír a las partes. La resolución así dictada en el caso de certiorari era *self-executing*—nada tenía que hacer Méndez & Cía., para hacerla efectiva. Por consiguiente, la apelación que contra dicha resolución interpuso el aquí interventor no suspendió los efectos de dicha resolución, pues el *status quo* existente al anularse el certiorari era el mismo que prevalecía al solicitarse de dicho juez la expedición de dicho auto. De otro modo se incurriría en el absurdo que se señala en el caso de *Walls* v. *Palmer,* supra, esto es, equivaldría a revocar la resolución que anuló el certiorari por la mera interposición del recurso de apelación.

El juez inferior sin duda conoce los principios anteriormente enunciados, pero sufre un lamentable error al aplicarlos a los hechos de este caso, como lo demuestra el siguiente párrafo de su opinión:

"Es distinguible *Roosevelt* v. *Corte,* 42 D.P.R. 833. En ese caso la orden de aseguramiento a ser revisada en el certiorari era una prohibiendo al Gobernador hacer ciertos nombramientos, y cuando tal es el caso, nada hay que suspender, pues la orden recurrida es *self-executing* por naturaleza, *lo que no sucede en el caso que nos ocupa en que para ejecutar la sentencia de desahucio es necesario el* process *de la corte municipal y la actuación afirmativa del márshal."* (Bastardillas nuestras.)

El juez inferior pierde de vista que el recurso de apelación no se interpuso contra la sentencia en el caso de desahucio sino contra la resolución que anuló el auto de certiorari. Al dictarse la resolución últimamente indicada, el *status quo* en el pleito de desahucio quedó exactamente igual que antes de interponerse el recurso de certiorari, pues al negarse la corte a anular la sentencia de desahucio, ésta quedó en toda su fuerza y vigor como si ningún recurso se hubiese interpuesto contra ella. Por el contrario, si la resolución de la corte de distrito en el certiorari hubiese sido en el sentido de anular la sentencia de desahucio y Méndez & Cía. hubiese apelado de dicha resolución, entonces sí que los procedimientos en el pleito de desahucio se hubieran suspendido, conservándose así el *status quo* prevaleciente al tiempo de declarar con lugar el certiorari y anular la sentencia de desahucio.

El caso de *Sucesión Padró* v. *Lloreda*, 24 D.P.R. 766, ratificado en *Viñas* v. *Lloreda, Juez de Distrito*, 25 D.P.R. 35, 36, ilustra perfectamente la cuestión que discutimos. En el primero de dichos casos se dijo lo siguiente:

"El presente es un caso de *certiorari*. La sucesión peticionaria alega que presentó una demanda de tercería en cierto pleito seguido por Virgilio Ramos y otros contra José Dolores Molina y otros, en cobro de dinero, en la Corte de Distrito de Arecibo, y acto seguido solicitó el libramiento de un auto de *injunction* a fin de que se paralizara la venta de ciertos bienes embargados en dicho pleito pertenecientes a la sucesión peticionaria. La corte puso en entredicho a las partes, las oyó en la fecha señalada para ello, y luego disolvió el entredicho y desestimó totalmente la solicitud de *injunction*. La sucesión peticionaria apeló de la resolución de la corte.

"Así las cosas, el demandante en el pleito sobre cobro de dinero pidió que continuara adelante la ejecución de la sentencia y por consiguiente que se vendieran los bienes embargados y la corte así lo acordó. La sucesión peticionaria alega que no se le notificó la moción del demandante, que no se le oyó por la corte en relación con la misma y que la corte en tal virtud y hallándose pendiente una apelación contra su resolución denegatoria del *injunction*, actuó sin jurisdicción.

"

"En cuanto a si la apelación interpuesta por la sucesión peticionaria despojó o no a la corte de distrito de jurisdicción para ordenar la ejecución de la sentencia dictada en el pleito sobre cobro de pesos, en vez de argumentar por nosotros mismos, transcribiremos las palabras de Stephen J. Field por tantos años Juez de la Corte Suprema de los Estados Unidos y entonces Juez Presidente de la Corte Suprema de California, al emitir la opinión de este último tribunal en el caso de *Hicks* v. *Michael,* 15 Cal. 107. El Juez Field se expresó así:

" ' '

" 'La orden restrictiva expiró por haber prescrito. Fué expedida de acuerdo con las disposiciones del artículo 116 de la Ley sobre Práctica, y su intención era sólo restringir a los demandados en tanto se determinaba, previa audiencia de las partes, si procedía la concesión del remedio provisional de *injunction* preliminar. Las palabras finales de la orden no tienen el efecto de convertirla en un *injunction* efectivo durante la pendencia del pleito. Sólo se refieren a la totalidad de la cuestión levantada por la moción, y no a la totalidad del asunto en controversia. La interpretación en que el abogado insiste es inconsistente con el objeto mismo del requerimiento para mostrar causa. El pronunciamiento hecho por el juez de distrito al efecto de que la orden restrictiva debía anularse, era innecesario, y probablemente fué incluído debido a exceso de precaución.

" 'Se deduce que no fué concedido en el caso *injunction* alguno, sino expresamente denegado. Por consiguiente, la apelación que el demandante ha establecido o se propone establecer, es sólo contra la orden denegando el *injunction,* y la cuestión que se presenta es sencillamente si una apelación contra una orden de esa naturaleza puede tener el efecto de crear un *injunction,* o de prolongar una orden restrictiva, mientras la decisión del juez es revisada por la corte de apelación. Es claro que no puede darse tal efecto a una apelación por más amplia fianza de indemnización que se preste. Cuando un *injunction* ha sido denegado, nada efectivo existe. Sólo puede gestionarse la suspensión de algo que tiene existencia y cuya vigencia se supone ha de causar perjuicio al apelante. Por tanto, dada la naturaleza del caso, sólo puede obtenerse una suspensión de procedimientos en cuanto a órdenes o sentencias que mandan o permiten hacer ciertos actos. (*Merced Mining Co.* v. *Fremont,* 7 Cal. 132.)' "

En el procedimiento de certiorari existen dos etapas: la primera consiste en la expedición del auto dirigido a la corte inferior para que remita los procedimientos a fin de ser revisados. Esta orden no prejuzga en absoluto la cuestión en controversia. Su único objeto es conseguir que se envíe a la corte superior el récord del caso para ser revisado. Claro es que mientras se resuelve en definitiva si procede o no el auto de certiorari, los procedimientos en la corte inferior quedan suspendidos, pues de otro modo podría resultar académico o ilusorio el recurso. Una vez resuelto el certiorari, ya sea anulando o sosteniendo el auto expedido, la primera resolución se esfuma y queda solamente la segunda, que es la que resuelve en definitiva el asunto. Es una situación similar a la que ocurre en los casos de *injunction* con el *restraining order,* que equivale a la expedición del auto de certiorari para el envío de los procedimientos, y la resolución anulando o sosteniendo el auto de certiorari, que equivale a la sentencia decretando o denegando el injunction. Como en el certiorari, el *restraining order* se esfuma y deja de producir efectos legales desde el momento en que se dicta la resolución decretando o denegando el injunction. Por consiguiente, no tiene razón alguna el abogado de la interventora al pretender que al anularse el auto de certiorari e interponerse recurso contra dicha resolución, queda subsistente la suspensión de los procedimientos a que dió lugar la expedición del auto en su primera etapa, es decir, para conseguir la remisión del récord a la corte de distrito.

En la opinión que sirvió de base a la resolución recurrida, el juez de la corte inferior dice:

"Está firmemente establecido que la expedición de un auto de *certiorari* en ausencia de alguna disposición estatutaria en contrario, tiene el efecto legal de sacar el récord fuera de la custodia del tribunal inferior, dejando allí nada que pueda servir de base a una ejecución, y opera como una suspensión de la ejecución de la orden o sentencia apelada. 14 C.J.S. 245, sec. 108."

Concedemos que al remitir la corte inferior el récord a la corte superior para su revisión, se suspenden los procedimientos en la primera, pero no es porque los autos físicamente se hallen en la corte superior, sino porque de continuar los procedimientos en la corte inferior el recurso de certiorari resultaría académico e ilusorio. En las cortes federales, en California y en las demás jurisdicciones donde se exige una fianza de supersedeas para poder apelar, si se establece un recurso de apelación y no se presta la fianza de supersedeas, la sentencia se ejecuta en la corte inferior a pesar de la apelación interpuesta y de hallarse los autos en la corte superior. Además, en Puerto Rico, de acuerdo con nuestra ley de certiorari (artículo 670 del Código de Enjuiciamiento Civil, ed. 1933), no es necesario que se remita al tribunal superior el récord original del caso, pudiendo remitirse copia certificada del mismo. En el supuesto de que se hubiesen enviado los autos originales y fueren éstos necesarios en cualquier momento en la corte inferior, pueden solicitarse, sustituyéndolos con copia certificada de los mismos.

El caso de *Todd* v. *Asamblea Municipal,* supra, en tanto en cuanto sostiene que un recurso de apelación interpuesto contra una resolución anulando un auto de certiorari suspende los procedimientos en el caso que dió motivo al certiorari, debe entenderse revocado.

Por los fundamentos expuestos, *procede en este caso anular la orden recurrida dictada por la Corte de Distrito de San Juan el 25 de noviembre de 1940 en tanto en cuanto prohibe a Méndez & Cía., demandante en el caso de desahucio, continuar los procedimientos en la corte municipal para hacer efectiva su sentencia, y devolver los autos originales a la corte de su procedencia para ulteriores procedimientos no inconsistentes con esta opinión.*